STATE OF NEW JERSEY, EX REL. CARL WEITZ, RELATOR, v. JOSEPH A. PRESTON, RESPONDENT.

Submitted May 11, 1934—Decided August 30, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the relator, *Levitan & Levitan.*

For the defendant, *J. Emil Walscheid.*

The opinion of the court was delivered by

PERSKIE, J. The relator, Carl Weitz, claiming the right to act as general manager, trust officer and title officer of the Cliffside Park Title and Guarantee and Trust Company, obtained a rule to show cause why a writ of *quo warranto,* &c., should not issue directed to the respondent, Joseph A. Preston, to show by what warrant he holds, &c., the same offices.

The record discloses that on February 4th, 1933, the board of directors of the bank adopted a resolution "that Mr. Joseph A. Preston be engaged as general manager for one week and from week to week thereafter, at a salary of $100 per week."

Relator asserts that on March 27th, 1934, respondent was discharged and that the relator was subsequently appointed.

Respondent answers that he was never discharged and therefore refuses to relinquish his post; and that relator

was never, in fact, appointed to the post claimed by a duly constituted board of directors of the bank. The right of the members of the board to act as directors is challenged.

The proofs disclose that there is a split among the directors of the bank. Relator is aligned with one faction, who appear to be the "outs" and respondent is aligned with the other faction, who are the "ins" and are operating the bank. But with this controversy we are not presently concerned. It is not now properly before us. The directors of the bank are not parties to this suit; they will not be bound by any judgment rendered in it. For, if the respondent should be removed the proper directors could reinstate him. The title to the offices of directors, by whom respondent was chosen, cannot be inquired into collaterally, in this action. It can only be attacked directly in an action for that purpose. (See *People, ex rel. McConville* v. *Hills* (*N. Y.*), 1 *Lans.* 202,

We also desire to mark the fact that respondent's appointment was limited to that of general manager. The argument of relator is confined thereto. We have therefore considered and disposed of this application accordingly.

This brings us to the consideration of the primary question as to whether the relator has any standing on this application. We think not.

The *Quo Warranto* act (3 *Comp. Stat.* 1709-1910, *p.* 4210) permits inquiry only into the right to an "office" or "franchise." The rule granted to relator by this court refers to the "office" of general manager. And while it is true that in some jurisdictions, notably England, the right to an office in a private corporation will not be determined by *quo warranto*, the courts of our state have, from an early day, consistently allowed such practice. *State* v. *Crowell*, 9 *N. J. L.* 390; *Bownes* v. *Meehan*, 45 *Id.* 189, 195; *Barna* v. *Kirczow*, 71 *N. J. Eq.* 196; 63 *Atl. Rep.* 611; *Hankins* v. *Newell*, 75 *N. J. L.* 26; 66 *Atl. Rep.* 929; *Schilstra* v. *Van Den Heuvel*, 82 *N. J. Eq.* 612; 90 *Atl. Rep.* 1056; *Smith* v. *Trustees of Bethel, &c., Church*, 89 *N. J. L.* 397; 99 *Atl. Rep.* 102; *Hunt* v. *Christensen*, 98 *N. J. L.* 676, 680; *Walker* v. *Maas*, 4 *N. J. Mis. R.* 230; 132 *Atl.*

*Rep.* 322; *Tonkin* v. *Kenworthy*, 112 *N. J. L.* 274; 170 *Atl. Rep.* 233.

In *Bownes* v. *Meehan, supra,* Chief Justice Beasley, *inter alia,* said:

"But the final exposition of this subject by the English courts is to be found in the authoritative case of *Darley* v. *Reg.* 12 *Cl. & Fin.* 530. The case is one of great consideration, as it was twice argued, and on the latter occasion in the presence of the judges, the only question debated being whether the office of treasurer of the public money of the county of the city of Dublin was an office for which an information in the nature of a *quo warranto* would lie. The conclusion was that the remedy was appropriate to the case, and Chief Justice Tindall, at the conclusion of his opinion, thus carefully defines the general rule on the subject. He says: 'And after a consideration of all the cases and *dicta* on this subject, the result appears to be that this proceeding by information in the nature of a *quo warranto* will lie for usurping any office, whether created by charter alone or by the crown, with the consent of parliament, provided the office be of a public nature, and a substantive office, not merely the function or employment of a deputy or servant held at the will and pleasure of others.' "

"It is plain that this definition, which is the reasonable result from common law rules, will vindicate the use of this procedure in the present case, for the office now in question is a substantive office, having an independent existence, being the creature of the statute, and in all its aspects of a public nature."

In *Hankin* v. *Newell, supra,* Mr. Justice Garrison, for this court, said:

"The respondents contend *in limine* that the writ of *quo warranto* cannot go to inquire into an alleged usurpation of an office in a private corporation.

"Such is the English rule. *Shortt Quo War.* 129.

"The American rules differs in this respect from the English. Mr. High, in his work on *Quo Warranto,* says: 'The propriety of an information in the nature of a *quo*

*warranto* as a remedy for an unlawful usurpation of an office in a merely private corporation was formerly involved in some doubt, but the question may now be regarded as settled in this country. This species of remedy being generally employed in England in cases of public or municipal corporations, the English precedents are inapplicable to this particular question and its solution must be referred to the more general principles underlying the jurisdiction in question. Tested by these principles, an intrusion into an office of a merely private corporation may, in this country, be corrected by information with the same propriety as in cases of public or municipal corporations, since there is in both cases an unfounded claim to the exercise of a corporate franchise amounting to a usurpation of the privilege granted by the state.' *High Extr. Leg. Rem. Ch.* 653.

"As early as the year 1827 the writ of *quo warranto* was so used in this court. *State* v. *Crowell,* 4 *Halst.* 390."

In *High Extr. Leg. Rem.* (3d ed., 1896), § 632, the test is so described:

"In determining the propriety of *quo warranto* information as a corrective of the usurpation of an office or franchise, an important distinction is to be drawn between the case of a public officer proper, affecting public rights and interests, and that of a mere employment or agency having no certain tenure, but determinable at the will of the employer. And while in a generic sense, it is true that every office is an employment, yet the converse of the proposition by no means follows, and there are many employments, even of a public nature, which are not offices. While, therefore, the jurisdiction under discussion is well established as regards the usurpation of offices of a public nature, *it is never exercised in the case of a mere agency or employment determinable at the pleasure of the employer.* \* \* \* *And the doctrine holds good even under a statute extending the remedy to offices in corporations created by the state, since the question of what constitutes an office is not affected by such a statute, and must be determined by the common law* \* \* \*."

For the distinction between an office, position or employ-

ment see *Fredericks* v. *Board of Health of Hoboken,* 82 *N. J. L.* 200; 82 *Atl. Rep.* 528; *State, ex rel. Bownes* v. *Meehan, supra; McGrath* v. *Mayor et al.,* 85 *N. J. L.* 188; 89 *Atl. Rep.* 48.

Section 42 of our Corporation act (2 *Comp. Stat.* 1709-1910, *p.* 1624) provides for summary review by the Supreme Court of the right to elective office in corporations formed under that act and also to all corporations having shares of stock (*Rankin* v. *Library Assn.,* 64 *N. J. L.* 265; 45 *Atl. Rep.* 622; *In re Loan Assn.,* 79 *N. J. L.* 31; 74 *Atl. Rep.* 310), and it has been held that even under that statute, the court will not delve into the election of *business agents or managers of corporations. Robak* v. *Polish Businessmen's, Inc., Assn.,* 95 *N. J. L.* 70; 111 *Atl. Rep.* 599.

Relator does not make it appear that he holds either an "office" or a "franchise."

It is common knowledge that modern business methods require and receive very careful planning, management and systemization in its operation. A manager may have a higher rank than the ordinary employe in the same firm where each are employed and may or may not have special authority in some matters. But all this notwithstanding, a manager in a modern business institution is nothing more than an exalted employe. It would, therefore, lead to an unjustifiable interference with the internal affairs of such a business, as here a banking corporation, to issue a writ of *quo warranto* in a dispute concerning such an employment.

Subject to the agreement of employment, an employe of a corporation is under the direction and control of the directors of the corporation (*Walker* v. *Maas, supra*). For the alleged breach of the terms of the employment each have full and complete remedies. A writ of *quo warranto* is not the proper remedy in such cases.

The rule to show cause is dismissed, with costs.